IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JULIANNE J. HARDER-GRANT, individually
and as the Personal Representative of the Estate of
NORMAN C. GRANT, JR., her husband,

        Case No. 6:21-cv-257-MC

    Plaintiffs,

v.        OPINION AND ORDER

PROLIFIK FISHERIES, LLC, an Oregon Limited
Liability Company,

    Defendant.
_____

MCSHANE, Judge:

    This action stems from the death of Norman C. Grant, Jr. ("Grant"). Defendant Prolifik Fisheries, LLC, moves for partial summary judgment on Plaintiff Julianne J. Harder-Grant's survival claim. Defendant alleges there is no genuine dispute of material fact concerning the availability of pre-death pain and suffering damages under Plaintiff's survival claim. Because Plaintiff presents sufficient evidence demonstrating a genuine issue of material fact, Defendant's Motion for Partial Summary Judgment, ECF No. 9, is DENIED.

## BACKGROUND

    Grant worked as a deckhand in the service of the F/V PROLIFIK, a vessel owned by defendant. Pl.'s Compl. ¶ 2.6, ECF No. 1; *id.* at ¶ 2.3. In February 2020, the F/V PROLIFIK docked at the Hallmark Dock in Newport, Oregon. Molyneux-Elliot Decl. Ex. B, at 6, ECF No. 10. Captain Dustin Leonnig gave his crew the weekend of February 7-8 off due to poor weather conditions. *Id.* Grant and Leonnig remained in Newport for the weekend. *Id.* at 8. On the

1 – ORDER

afternoon of February 8, Grant and Leonnig went ashore to have lunch at the Clearwater Restaurant. *Id.* Throughout the afternoon, Grant consumed a large quantity of alcohol. Molyneux-Elliot Decl. Ex. C, ECF No. 10; Pl.'s Decl. ¶ 2, ECF No. 18.

After parting ways with Leonnig later that evening, Grant returned to the Clearwater. Molyneux-Elliot Decl. Ex. A, at 6, ECF No. 10. Surveillance video captured Grant leaving the Clearwater at 7:45 p.m. and walking back to the dock at 7:46 p.m. Molyneux-Elliot Decl. Ex. E, at Video 1; Video 2; Video 3, ECF No. 10. At 7:47 p.m., Grant called Leonnig to ask about a barbecue happening in town. Molyneux-Elliot Decl. Ex. B, at 12. Leonnig informed Grant that he intended to go to sleep. *Id.* at 13. A "ping" from Grant's cell phone at 7:51 p.m. showed the phone in the middle of Yaquina Bay. Molyneux-Elliot Decl. Ex. A, at 1. Grant failed to show up for work on the morning of February 9, prompting Leonnig to contact local authorities. Molyneux-Elliot Decl. Ex. B, at 14; Molyneux-Elliot Decl. Ex. A, at 5. When Grant's body was recovered on February 25, medical examiner Marilyn Fraser, M.D., examined the body at a local funeral home. Molyneux-Elliot Decl. Ex. F, at 3, ECF No. 10. Dr. Fraser listed "probable asphyxia by drowning" as Grant's cause of death, but noted that because the body lacked a head, she could not rule out "things like head injury if he had fallen." *Id.* at 4; *id.* at 11. Dr. Fraser also commented that it was "unknowable" if Grant was conscious while drowning because the event was "unwitnessed and un-videoed." *Id.* at 9.

Plaintiff demands pre-death pain and suffering damages as the personal representative of Grant's estate. As noted, Defendant moves for partial summary judgment on this claim.

## STANDARDS

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is

"genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

To recover for a decedent's pain and suffering, "the beneficiary must show by a preponderance of the evidence that the decedent was 'conscious for at least some period of time after he suffered the injuries which resulted in death.'" *F/V Carolyn Jean, Inc. v. Schmitt*, 73 F.3d 884, 885 (9th Cir. 1995) (quoting *Cook v. Ross Island Sand & Gravel Co.*, 626 F.3d 746, 749-50 (9th Cir. 1980)). According to Plaintiff, sufficient circumstantial evidence exists that could allow a jury to conclude that Grant drowned and experienced conscious pain as a result. Pl.'s Resp. 2, ECF No. 16. Plaintiff provides three pieces of evidence to support this claim: that 1) a lack of physical evidence around the dock could lead a jury to infer that Grant was conscious when he entered the water, 2) video surveillance showing Grant walking towards the vessel could lead a jury to infer he fell into the water while attempting to reboard the vessel, and 3) the short distance between the dock and the water could lead a jury to infer Grant was not rendered unconscious before falling into the water. *Id.*

Turning to the first argument, Plaintiff compares the instant case to *Cook v. Ross Island Sand & Gravel Co.*, where the lack of a skull fracture on a seaman's head found months after disappearing constituted "substantial" evidence of pre-death pain and suffering. *Cook*, 626 F.2d at 750. Plaintiff asserts that the absence of blood, hair, tissue, clothing, and other physical evidence around the dock similarly establishes "substantial" evidence of pre-death pain and suffering. Pl.'s Resp. 2. In the case of *Schulz v. Pennsylvania Railroad Company*, a tug fireman working on a boat drowned because of the negligence of his employer. *Schulz v. Pa. R.R. Co.*, 350 U.S. 523 (1956). According to the Court in *Schulz*, jurors must reach conclusions based on common sense, common understanding, and fair beliefs grounded on proof of circumstances from which inferences can be fairly drawn. *Id.* at 526. Similarly, in *Cook*, the Ninth Circuit held that the question of a decedent's consciousness lies squarely within the province of the jury. *Cook*, F.3d at 751. Based on these precedents, the issue of whether Grant experienced substantial pre-death pain and suffering should be decided by a jury.

The question in the instant case is a close one. In *F/V Carolyn Jean v. Schmitt*, the Ninth Circuit held that summary judgment is usually granted when the evidence equally supports theories of instantaneous death and pre-death pain and suffering. *F/V Carolyn Jean*, F.3d at 885. Grant's brother, Jack Jager, began examining the dock and the area around it two days after Grant's disappearance. Jager Decl. 2, ¶ 9, ECF No. 21. Jager did not find blood, hair, torn clothing, Grant's hat, or any other sign Grant had been injured while he was on the dock. Jager Decl. 3, ¶ 10. Jager also used a kayak to search the waters around the dock but did not find any physical evidence in the water. Id. at ¶¶ 12-13. Defendant argues that it is unreasonable to presume that every person who falls, hits their head, and loses consciousness must leave physical evidence behind, and that expert testimony should be required. Def.'s Rep. 5, ECF No. 24.

4 – ORDER

However, expert testimony is not necessary to establish a genuine issue of material fact. The absence of physical evidence around the dock, along with other circumstantial evidence outlined below, could lead a reasonable jury to infer that the evidence does not equally support a theory of instantaneous death and pre-death pain and suffering, and that Grant was conscious when he entered the water.

In addition to the lack of physical evidence on and around the dock, testimony from Dr. Fraser provides context as to whether Grant experienced conscious pain and suffering upon entering the water. After examining Grant's body, Dr. Fraser determined that the approximate interval of onset to death ranged between three to five minutes. Molyneux-Elliot Decl. Ex. F, at 7. Dr. Fraser made this determination because in cases of an unwitnessed drowning, three to five minutes is the rule of thumb for determining the interval of time that passes before a person perishes from drowning. *Id.* at 8. Based on this assumed interval of time, Grant likely experienced conscious pain and suffering as a result of entering the water.

Turning to Plaintiff's second argument, Plaintiff alleges that the video surveillance showing Grant walking toward the vessel could lead a jury to infer he fell into the water while attempting to reboard the vessel. Pl.'s Resp. 2. The video surveillance demonstrates that Grant was able to successfully ambulate approximately 166 paces from the Clearwater to the dock without incident. Pl.'s Resp. 7. Leonnig attested to the dangerous conditions around the dock, stating that the dock could become slippery during wet weather. Jacobsen Decl. Ex. A, at 4. Reboarding the vessel required using cables, stepping on rails, and hoisting oneself over the vessel instead of walking up a gangway, a method that Leonnig described as "sketchy." Jacobsen Decl., Ex. H, at 4. Additionally, based on Jager's observation of the dock both at night and during the day, it seemed unlikely that Grant could have fallen over the safety railing, also

known as a bull rail. Jager Decl. 4, ¶ 17. The purpose of the bull rail is to prevent people and heavy objects from falling into the water, leading Jager to conclude that Grant could not have fallen over the bull rail, been knocked unconscious by hitting the dock, then fallen into the water and drowned. *Id.* This circumstantial evidence, when considered with the lack of physical evidence on the dock and surrounding areas, could allow a reasonable jury to infer that Grant drowned as a result of falling into the water while attempting to reboard the vessel.

      Finally, Plaintiff argues that the short distance from the dock to the water could lead a jury to infer that Grant was not rendered unconscious as a result of falling from the dock. Pl.'s Resp. 2. According to Plaintiff, a reasonable jury could look at the scene and rely on common sense and experience to determine whether Grant was conscious when he entered the water. Pl.'s Resp. 18. Plaintiff uses the case of *Petition of United States Steel Corp.* to support this argument. *Id.* In *Petition*, several seamen drowned after two ships had a "soft" collision, allowing an inference that the decedents were unlikely to have "been rendered unconscious prior to their final moments." *Petition of United States Steel Corp.*, 436 F.2d 1256, 1276 (6th Cir. 1980). Plaintiff contends that the short distance between the dock and the water in the instant case similarly suggests a "soft" fall for Grant. Pl.'s Resp. 18. By relying on common sense and experience, a jury could reasonably infer that a short fall from the dock into the water would not have rendered Grant unconscious.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

6 – ORDER

## CONCLUSION

Because Plaintiff presents sufficient evidence demonstrating the existence of a genuine issue of material fact on their survival claim for the decedent's alleged pre-death pain and suffering, Defendant's Motion for Partial Summary Judgment, ECF No. 9, is DENIED.

IT IS SO ORDERED.

DATED this 19th day of October 2021.

/s/ Michael McShane
Michael McShane
United States District Judge

7 – ORDER